**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02230-DDD-MDB

YARITZA DIAZ,

Plaintiff,

v.

EL PASO COUNTY DEPARTMENT OF HUMAN SERVICES,

Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff, Yaritza Diaz ("Diaz"), by and through her attorney, Scott A. Mayer, Attorney at Law, files this response to the Rule 12(b)(6) Motion to Dismiss ("Motion") filed by El Paso County Department of Human Services ("Defendant") or ("EPC DHS") against Plaintiff's Pro Se Complaint ("Complaint"). For the following reasons, Defendant's Motion to Dismiss should be denied.

## I. OVERVIEW

Based on the following overview, Defendant's Motion to Dismiss must be denied. However, this Response will still follow up with additional case law and arguments to bolster the overview establishing at the outset that the Motion to Dismiss cannot be granted.

This action is based on essentially seven (7) claims pled in the alternative. Plaintiff seeks relief based on: (1) Sex – female discrimination under Title VII (Claims 1 – 3); (2) Pregnancy discrimination under Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978 ("PDA") (Claims 1 – 3); (3) National origin – Panamanian discrimination under Title VII (Claims 1 – 3) ; (4) Race – Latina/Hispanic discrimination under

Title VII (Claims 1 – 3); (For clarification, the Charge alleged both national origin and Hispanic/Latina discrimination. Mrs. Diaz's national origin is Panamanian and her race is Hispanic/Latina.).; (5) Disability discrimination under the ADAAA (the amended version of the ADA adopted in 2008) and Defendant's failure to accommodate Mrs. Diaz's high risk pregnancy fall under Title VII and PDA, as well as the ADAAA. (Claims 1 and 4) (see Motion, p.10 - Pregnancy with a physical impairment is sufficient to meet the definition of a disability under the ADAAA.); (6) Termination discrimination under Title VII, PDA, as well as under the ADAAA. (Motion, p. 2 – "On November 2, 2020, Mrs. Diaz was discharged.") (Claims 2 and 5); and (7) Retaliation discrimination for putting Mrs. Diaz on administrative leave and terminating her for requesting reasonable accommodation under Title VII, PDA as well as the ADAAA. (Claims 1 - 6)

As shown below, the Motion to Dismiss should be denied because the retaliation, denial of reasonable accommodation, and termination claims all state causes of action, since all the allegations in the Complaint, and attached documents, are presumed true on a 12(b(6) motion to dismiss.

## II. <u>LEGAL STANDARD FOR REVIEW OF A 12(b)(6) MOTION</u>

By filing a Rule 12(b)(6) motion Defendant must admit the well-pled allegations as true and draw all reasonable inferences in favor of the Plaintiff on such motions. The purpose of a 12(b)(6) motion is to decide the adequacy of the pleading, not to determine the merits of the case. Although Defendant cited *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2002) for the plausibility standard not requiring the Plaintiff to prove the allegations at the pleading stage, it nevertheless argued the opposite. (Motion, p. 3)

Since Defendant filed a 12(b)(6) motion which challenges the sufficiency of the complaint to state a claim, but does not challenge the underlying facts, Defendant's motion must be denied. There will be time to test the differing versions of the truth that the parties have but that time is not on this motion.

In *Nolan v. Haley*, 2023 WL 143023, at *6 (D. Colo. January 10, 2023) (adopted in part and rejected in part, on other grounds, in *Nolan v. Haley*, 2023 WL 2401065 (D. Colo. March 8, 2023) this Court held, that in reviewing Plaintiff's *pro se* complaint: "The Court, therefore, 'review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys.' *Trackwell v. United States*, 472 F.3d 1242 (10th Cir. 2007) (citations omitted); see *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972) (holding the allegations of a *pro se* complaint 'to less stringent standards than formal pleadings drafted by lawyers')."

This Court, *id*. at **8-10, then set forth the well settled law in the 10th Circuit controlling the standards for judging Defendant's Rule 12(b)(6) motion to dismiss holding: 1) The court's function on a Rule 12(b)6) motion is only to assess whether the plaintiff's complaint is legally sufficient to state a claim for which relief may be granted.; 2) All facts are presumed true, and are construed in a light most favorable to the plaintiff.; 3) The complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))". Plausibility means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; and 4) The court typically does not look beyond the pleadings which include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice.

In the instant case, Plaintiff's EEOC Charge was attached to her Complaint. The Charge expressly stated "see attached." (EEOC Charge, I. B. par. 8) Attached to the EEOC Charge are Plaintiff's Statement and Exhibits in Support of the EEOC Charge. (Plaintiff's Exhibits 1 - 5) Therefore, based on the foregoing 10th Circuit law, since all these documents are attached to the Complaint, they are "pleadings" for purpose of this Motion to Dismiss. *Id.* at *10.

On the other hand, Defendant's Motion, *II., Statement of Material Allegations*, relies on unidentified "matters outside the pleadings", fails to include any citation to and is rebutted by the Complaint and its attachments. Therefore, Defendant's statement of allegations should be "excluded by the court." *Id.*, at *10.

## III. <u>ARGUMENT</u>

### A. <u>Plaintiff's Motion To Dismiss Claims 2 and 5 Title VII, PDA And ADAAA Claims Should Be Denied Since Mrs. Diaz Is Not Required To Plead Prima Facie Allegations And Constructive Discharge And Administrative Leave Are Adverse Actions.</u>

*i.* *<u>Prima Facie Case</u>*

Defendant's Motion's Heading, *B. i., Plaintiff Has Failed to Establish a Prima Facie Case of Sex or National Origin Discrimination*, incorrectly states Rule 12(b)(6) law. The first case cited by Defendant in support of its argument Mrs. Diaz did not establish a prima facie case of discrimination was a Colorado state court decision, not a 10th Circuit case, which the court must disregard. (Motion to Dismiss, p. 4)

Defendant's case law actually supports the denial of the Motion to Dismiss all the claims. Defendant relied on the 10th Circuit decision, *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) and admitted the correct legal standard for reviewing a Rule 12(b)(6) motion to dismiss: "[T]he 12(b)(6) standard does not require that [a plaintiff] establish a prima facie case in her complaint". (Motion, p. 5) Yet, Defendant ignored this standard in its Motion to Dismiss as well

as all the 10th Circuit legal standards governing a review of a Rule 12(b)(6) motion as set forth in *Nolan*, *supra*, at ** 8 – 10. Also, a Title VII plaintiff need not set forth allegations of a prima facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Instead, a plaintiff alleging discrimination in violation of Title VII must only set forth in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id* . at 508. Therefore, the Title VII, PDA, and ADAAA claims must be judged by the foregoing Rule 12(b)(6) legal standards which require the court to deny Defendant's Motion to Dismiss all of Mrs. Diaz's Claims because Defendant is on fair notice of Mrs. Diaz's claims and the grounds upon which those claims rest.

In the instant case, all the Claims in the Complaint, and supporting attached documents, set forth plausible claims under Title VII, PDA, and ADAAA based on the *Iqbal* plausibility standards (see *Nolan*, *supra*, at ** 8 – 9), because the Complaint identified the type of discrimination (pregnancy, disability, sex, national origin, race), by whom (Julie Krow, Defendant's Executive Director, and Marilyn Aona, EPC DHS Technician), and when (August 6, 2020, September 14, 2020, and November 2, 2020). (Complaint, Claim 2) Therefore, based on the foregoing, Defendant's Motion to Dismiss must be denied on all Claims.

Defendant's repeated argument Mrs. Diaz failed to plead a prima face case on her Title VII, PDA, and ADAAA claims is further proof Defendant is improperly arguing a motion for summary judgment, not a motion to dismiss, while only giving lip service to the plausibility standard. (See Motion to Dismiss, pp. 4 – 6) Therefore, for the foregoing reasons, Defendant's Rule 12(b)(6) Motion to Dismiss the Title VII, PDA, and ADAAA claims must be denied because all the allegations of the Complaint are assumed true on a 12(b)(6) motion to dismiss construed in a light most favorable to Diaz. (*Nolan*, *supra*, at * 8)

*ii.* *Constructive Discharge*

Defendant argues Mrs. Diaz did not establish a constructive discharge claim under Title VII, PDA, and ADAAA solely because she allegedly offered "no explanations or examples of intolerable working conditions." (Motion to Dismiss, p. 6) However, Defendant conceded: "On November 2, 2020, Ms. Diaz was *discharged*". (Motion, p. 2) (emphasis added) Further, Defendant also admitted the constructive discharge elements are present in the Complaint for purposes of its Motion to Dismiss, because not only did Mrs. Diaz resign, but also her resignation was involuntarily, and constructive discharge constituted an adverse action. (Motion, p. 6)

Defendant relied on *Thompson v. Adams Cnty. Sch. Dist. 50*, No. 17-CV-3147-WJM-NYW, 2018 WL 5619336 at *3 (D. Colo. Oct. 30, 2018) (Motion p. 5), holding constructive discharge is an adverse action. Further, contrary to Defendant, when a plaintiff resigns: "'The question is not whether working conditions were difficult or unpleasant.' *Yearous [v. Niobrara County Mem'l Hosp*., 128 F.3d 1351 (10th Cir. 1997], 128 F.3d at1357. . . . Rather, Plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship. *Yearous*, at 128 F.3d at 1357." *Exum v. United States Olympic Comm*., 389 F.3d 1130, 1135 (10th Cir. 2004) Requiring an employee to choose between resignation and termination is a constructive discharge if the employee's decision is involuntary. *Id*. at 1135.

In the instant case, Defendant gave Mrs. Diaz the Hobson Choice described above ("no free choice"). Mrs. Diaz's decision was involuntary as alleged in the Complaint, Claims 2 and 5, and EEOC Charge, I. B. 7: "On November 2, 2020, Plaintiff was constructively discharged when she was forced to resign or be terminated for cause based on Aona's false accusations." Therefore,

since the pleadings establish the elements of constructive discharge, these allegations clearly constitute an adverse action supporting the Complaint's Title VII, PDA, and ADAAA claims.

*iii.* *Administrative Leave*

Further, for purposes of a Rule 12(b)(6) motion to dismiss, since the allegations of the Complaint, and its attachments, must be presumed true, they establish Defendant placed Mrs. Diaz on administrative leave removing her from all working conditions. (Plaintiff's Exhibit 4, p. 9) "[T]he Letter of Understanding and being placed on administrative leave constituted adverse actions". *Trujillo v. Bd. of Educ of Albuquerque Pub. Schs*, 470 F. Supp. 2d 1270, 1280 at fn. 4 (D.N.M. 2005) (affirmed by, remanded by *Trujillo v. Bd. of Educ of Albuquerque Pub. Schs*, 212 Fed. Appx. 760 (10th Cir. 2007) (on other grounds). See also, *Schuler v. City of Boulder*, 189 F.3d 1304, 1310 (10th Cir. 1999) (The 10th Circuit affirmed summary judgment, holding "removing job duties" from a public employee is an adverse action and constitutes retaliation.) Therefore, for the foregoing reasons, the Motion to Dismiss should be denied on all Claims.

**B. Defendant's Motion To Dismiss The Title VII and PDA Claims In Claim 1 Should Be Denied Since Plaintiff Is Not Required To Allege Prima Facie Case Allegations Defendant Treated Similarly Situated Employees More Favorably At This Stage Of The Pleadings Prior To Discovery.**

Defendant incorrectly claims the Title VII and PDA as well as the ADAAA Claims suffer from the same deficiencies, failure to plead prima facie allegations that similarly situated non-pregnant women, and non-disabled, males, non-Panamanian, and non-Hispanic/Latina employees were treated better. (Motion to Dismiss, pp. 3 – 4, 7) Defendant incorrectly argues the Complaint must plead these prima facie case allegations in the Complaint, yet relies on *Khalik, supra*, at 1192, holding the opposite standard controls in the 10th Circuit. (Motion, pp. 5 - 6)

Defendant's reliance on *Young v. UPS*, 575 U.S. 206, 135 S. Ct. 1338, 1354,191 L. Ed. 279 (2015) (Motion, p. 4) is misplaced. First, *Young*, *id*. at 218, is the leading United States

Supreme Court case resolving "lower-court uncertainty about the interpretation of the [Pregnancy Discrimination] Act. . . . [T]he Act's first clause specifies that discrimination ''because of sex'' includes discrimination 'because of . . . pregnancy.' [The second clause of the PDA] added: '[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but *similar in their ability or inability to work*.' 42 U. S. C. §2000e(k) (emphasis added)." *Young, id*. at 218.

Second, the Court relaxed the standards for proving a pregnancy discrimination case under the PDA. *Id*. at 228 – 229. The Court held : "That [McDonald Douglas] framework requires a [pregnant] plaintiff to make a prima facie case of discrimination [under the PDA]. But it is 'not intended to be an inflexible rule'. [citation omitted]. Rather, an individual plaintiff may establish a prima facie case by 'showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' Title VII [citation omitted]. The burden of making this showing is 'not onerous' [citation omitted]. In particular, making this showing is not as burdensome as succeeding on 'an ultimate finding of fact as to' a discriminatory employment action [citation omitted]. Neither does it require the plaintiff to show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways [citation omitted]." *Young, id.*, at 228.

Third, unlike the plaintiff in *Young*, *id*., Mrs. Diaz is not alleging a pregnancy policy violation, but rather individual violations.

Fourth, in *Young, id*., the prima facie case issue arose after discovery. Defendant admits in its Motion, p. 5, relying on *Kahlik, supra*, at1192 ([T]he 12(b)(6) standard does not require [a plaintiff] to establish a prima face case in her complaint. . ."

Fifth, the Court in *Young, id*., at 223, expressed no view on the following EEOC guidance on the PDA: "Soon after the Act was passed, the EEOC issued guidance consistent with its pre-Act statements. The EEOC explained: '*Disabilities caused or contributed to by pregnancy* . . . for all job-related purposes, shall be treated the same as disabilities caused or contributed to by other medical conditions.' See §1604.10(b) (1979)." (emphasis added)

Finally, the Court in *Young, id*., decided a motion for summary judgment, after discovery on the issue of the treatment of the similarly situated comparable employees element in the prima facie PDA case, and did not decide a motion to dismiss before discovery.

Significantly, contrary to Defendant's Motion, p. 7, Diaz did allege disparate treatment in the EEOC Charge, I., *Termination Due to My Sex, Female and Pregnancy*, B., 9: "Similarly situated male employees and non-pregnant female employees were not constructively discharged and forced to resign or be terminated [or denied reasonable accommodation when placed on administrative leave and terminated in retaliation for requesting accommodation]" and in the EEOC Charge, II., *Termination Due to My National Origin [and Race],* B., 9.: "Similarly situated non-Hispanic/Latina [Panamanian] employees were not constructively discharged and forced to resign or be terminated [or denied reasonable accommodation when placed on administrative leave and terminated in retaliation for requesting accommodation]."

Therefore, contrary to Defendant's Motion to Dismiss, *Young, id*., at 228, stands for the proposition that Mrs. Diaz not only has the right to discovery on similarly situated comparable employees, but also establishes Mrs. Diaz does not necessarily have to prove more favorable treatment was given to similarly situated employees by Defendant at this stage of the pleadings in a PDA case. The Motion to Dismiss the Title VII, PDA and ADAAA Claims should be denied.

**C. <u>Defendant's Motion To Dismiss Claims 4 - 6 Should Be Denied Since Mrs. Diaz's Title VII, PDA, And ADAAA Disability And Retaliation Claims Were Made To The</u>**

**<u>EEOC, On Notice Of The ADAAA Disability and Retaliation Claims And Are Within The Scope of Claims 1 – 3.</u>**

At the outset, Defendant is not moving to dismiss Diaz's Title VII, PDA, or retaliation claims under these statutes on the grounds the Charge alleged these claims because Defendant admits in its Motion to Dismiss, p. 9: "Plaintiff's EEOC Charge alleges discrimination and retaliation based on Sex, National Origin, and Pregnancy." However, Defendant incorrectly contends that the EEOC was not on notice of Mrs. Diaz's ADAAA, ADAAA failure to accommodate, and ADAAA retaliation claims made in the Complaint, Claims 4 - 6, and the Complaint's attachments. (Motion to Dismiss, pp. 8 – 9) (Plaintiff's Exhibits 1 – 5) Defendant also argues the ADAAA failure to accommodate, constructive discharge/termination, and retaliation claims in Claims 4 – 6 are not within the scope of the Title VII and PDA Claims 1 – 3. (Motion, p. 9) For the following reasons, these arguments are without merit.

First, Defendant's Motion to Dismiss Claims 4 - 6 should be denied: "Accordingly, the current state of the law in the Tenth Circuit is that 'a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim.'" [*Lincoln v. BNSF Ry. Co*., 900 F.3d 1166 (10th Cir. 2018)] *Id.*" *Smith v. Cheyenne Inv'rs L.P*., 904 F.3rd 1159, 1164-1165 (10th Cir. 2018) (relied on by Defendant in Motion, pp. 8 - 9) Defendant admits it cannot avoid dismissal of its motion to dismiss Claims 4 – 6 because the foregoing 10th Circuit change in the law requires Defendant to raise failure to exhaust as an affirmative defense in its Answer.

Defendant's reliance on the unpublished 10th Circuit opinion *Circocco v. McMahon*, 768 Fed. App'x 854, 858 (10th Cir. 2019) is misplaced since, contrary to the Motion, pp. 8 – 9, grounds for Defendant's motion to dismiss defense do not appear on the *face* of the complaint. (emphasis

added) Defendant admits only in general terms it is relying on outside matter. According to *Jones v. Bock*, 549 U.S. 199, 215 (2007), this is the other side of the coin because the effect of reliance on alleged "outside matter" converts its motion to dismiss to a motion for summary judgment. Defendant never specifically identified any allegations in the Charge and its attachments (Plaintiff's Exhibits 1 – 5) to support a motion to dismiss, nor do any exist, or a motion for summary judgment. Therefore, the motion to dismiss must be denied and should not be converted to a motion for summary judgment on Claims 4 – 6, since the only way Defendant can oppose these Claims is in an affirmative defense in its Answer when its motion to dismiss is denied.

Second, Defendant concedes whether the Charge alleges a claim is judged by a "lenient standard." (Motion, p. 9) "While we 'liberally construe' the plaintiff's allegations in the EEOC charge, 'the *charge* must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]' *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (emphasis added). . . . After all, the test is whether the claim [Mrs. Diaz] now brings in federal court was within the scope of the administrative investigation that would 'reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge.' *Jones* 502 F.3d at 1186 (emphasis in original)." *Smith, supra,* at 1164-1165. Claims 4 – 6 in the Complaint are "within the scope of the administrative investigation that would reasonably be expected to follow from the discriminatory acts alleged in the administrative charge", and its attachments (EEOC Charge, I. B. 8: "see attached") (Plaintiff's Exhibits 1 – 5) and contain "facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.*

Third, the EEOC Charge, attached to the Complaint, and the documents attached to and in support of the Charge include the following discriminatory "acts" and "facts" concerning the ADAAA disability and retaliation Claims 4 – 6 in the Complaint as follows:

1. On April 6, 2009, Diaz was hired as an Income Maintenance Technician ("IMT") II, at the El Paso County Department of Human Services ("DHS"). On May 1, 2010, Defendant promoted Diaz to IMT III. On March 23, 2020, Defendant laterally transferred Diaz to the position of Income Maintenance Specialist I. (Scheduling Order, Undisputed Facts, 1)

2. On September 13, 2019, Defendant rated Mrs. Diaz in her 2018-2019 Performance Evaluation as "Solid Performer" and that she met Defendant's expectations. (Plaintiff's Exhibit 4, pp. 18, 24 – 25)

3. Diaz's supervisor, Meghan Dawkins, recommended to Diaz to apply for medical assistance benefits solely to cover her pregnancy which Mrs. Diaz did through the PEAK website. (Plaintiff's Exhibit 3, Exhibit X, p. 2)

4. On August 4, 2020, Marilyn Aona, Economics Benefits Supervisor, (Aona) did three (3) things regarding Mrs. Diaz as follows: 1) Mrs. Diaz's email exchange with Marilyn Aona, Economics Benefits Supervisor, regarding Mrs. Diaz's PEAK application lasted only 13 minutes. (Plaintiff's Exhibit 4, pp. 1 – 3) Mrs. Diaz answered Aona's questions in the email exchange that she was still employed, as reflected in Mrs. Diaz's email address which was the same as Aona's email address, and that Mrs. Diaz was the "only on who had income" in her family. When Aona asked Mrs. Diaz if her husband made "$0", Mrs. Diaz clarified that her husband "this year so far he might have made $500 so far on odd jobs" from his self-employment. Mrs. Diaz told Aona: "I was really only applying for me to help cover my pregnancy." (Plaintiff's Exhibit 4, p. 1); 2) On August 4, 2020, after this email exchange, and based solely on this brief discussion of Mrs. Diaz's husband self-employment, Aona made a written Investigation Referral to Defendant's Fraud and Investigation Unit that Mrs. Diaz allegedly underreported her husband's income for medical assistance for the current medical assistance application as well as a prior one. (Plaintiff's

Exhibit 4, p. 6); and 3) On August 4, 2020, despite Aona's medical assistance fraud allegation the same day, Defendant did not disapprove both Mrs. Diaz and her husband for medical assistance benefits, but instead, still approved Mrs. Diaz for medical assistance benefits for the balance of Mrs. Diaz's pregnancy effective September 1, 2020, while not for her husband (for whom Mrs. Diaz was not seeking benefits) as of August 31, 2020, based on Defendant's decision he was "over the income limit". (Plaintiff's Exhibit 4, pp. 4 – 5)

5. On October 2, 2020, during the fraud unit investigation, instigated by Aona, that Mrs. Diaz underreported her husband's alleged income, and only two months after Aona's investigation referral of Mrs. Diaz, Defendant reversed its August 4, 2020 prior denial of benefits to her husband in a letter informing Mrs. Diaz: "Gary qualifies for Health First Chicago (Colorado Medicaid). Your benefits start on September 1, 2020." Defendant concluded Mrs. Diaz's husband was now within income limits for eligibility to receive medical assistance benefits retroactive to September 1, 2020. The letter also informed Mrs. Diaz her benefits were unchanged. (Plaintiff's Exhibit 3, Exhibit T, p. 2) On October 3 and 5, 2020, Defendant sent to Mrs. Diaz emails that she was sent the October 2, 2020 letter. (Plaintiff's Exhibit 3, Exhibits U and V) Even though the fraud unit did not consider Aona's October 2, 2020 letter reversing Defendant's reason for investigating Mrs. Diaz, during her administrative leave, Krow did receive this pivotal letter from Plaintiff's counsel but Defendant refused to reinstate Mrs. Diaz. (Plaintiff's Exhibit 5, pp. 33 – 34)

6. On August 5, 2020, Dr. David Stark, Mrs. Diaz's obstetrician, Centura Health, gave Mrs. Diaz a letter to give to Defendant which stated the following about her at risk pregnancy: "Yaritza Diaz is under my care for her pregnancy. Please allow her to continue to work from home through her pregnancy. We support her concern for the safety of her health and her unborn child." (Plaintiff's Exhibit 4, p. 8)

7. In retaliation for requesting reasonable accommodation under Title VII, PDA and ADAAA (see also No. 9 below), on August 6, 2020, during the fraud investigation, Defendant, by Julie Krow, Defendant's Executive Director, (Krow") placed Mrs. Diaz on administrative leave based on the fraud investigation. Defendant ordered Mrs. Diaz to "turn over any and all County property and equipment you have in your possession" and informed her she was "not allowed on County premises during the investigation". (Plaintiff's Exhibit 4, p. 9)

8. On August 6, 2020, Mrs. Diaz wrote a note to self: "I turned this letter [Dr. Stark's August 5, 2020 letter] in to Human Resources a few hours before being put on administrative leave. This is leading me to also believe they don't want to deal with a pregnant woman & taking the opportunity to terminate me. None of the issues cited by policy pertain to the application submitted on peak [sic] it appears they are targeting my work ethics." (Plaintiff's Exhibit 4, p. 7)

9. On September 14, 2020, Defendant notified Mrs. Diaz by a letter from Krow, "Subject: Notice of Intent to Terminate Employment". (Plaintiff's Exhibit 3, Exhibit X)

10. Defendant admitted in its Motion to Dismiss the only reason it fired Mrs. Diaz: "On November 2, 2020, Ms. Diaz was *discharged*" based on Defendant's fraud unit finding Mrs. Diaz allegedly underreported her husband's income on the 2013 and 2020 medical assistance applications for which she allegedly received benefits. (Motion, p. 2) (emphasis added) Plaintiff did not receive any benefits on either application. (Plaintiff's Exhibit 1, pp. 2 - #6, 19 - #4)

Fourth, during the EEOC investigation, Plaintiff's attorney filed the October 4, 2021 *Complainant's Amended Response To Respondent's Position Statement and Exhibits* with the EEOC and requested the EEOC to amend the Charge to add denial of reasonable accommodation and retaliation under the ADAAA. (Plaintiff's Exhibit 6) The Response argued: 1) Under the ADAAA, "asking for an accommodation is clearly protected activity." *Foster v. Mountain Coal*

*Co.*, LLC, 830 F3d 1178, 1187 (10th Cir. 2016); 2) Under the ADAAA, Mrs. Diaz can also allege retaliation, because "she 'engaged in protected [activity] by becoming pregnant, informing [Defendant] of her pregnancy, and . . . asking for an accommodation[,] namely, time off in order to have the baby [work at home]." *Rios v. Leprino Foods Co*., 2020 U.S. Dist. LEXIS, 49483 at *11 (D. Colo., March 23, 2020) (unchanged by subsequent history; see *Rios v. Leprino Foods Co.*, 2021 U.S. Dist. LEXIS 170803 (D. Colo. Sept. 9, 2021); 3); 3) Contrary to Defendant's Motion, p. 8 ("Plaintiff's Complaint does not allege that Plaintiff engaged in any protected activity. . .") , Mrs. Diaz's pregnancy and request for accommodation were protected activities. The Amended Response also stated: "[C]onditions that are the "*physiological* result of being pregnant [or] bearing a child" are protected under Title VII as medical conditions related to pregnancy or childbirth. *Battino v. Redi-Carpet Sales of Utah, LLC*, 2021 WL 414474, 2021 U. S. App. LEXIS 27403 *7 (10th Cir. 2021) (unpublished opinion) (Plaintiff's Exhibit 6, pp. 4 – 5) In fact, contrary to its Motion to Dismiss, p. 9, ("The Charge does not allege disability discrimination and retaliation."), Defendant conceded in its Motion to Dismiss, pp. 10 – 11, that pregnancy, with a physical impairment, as shown above, is sufficient to meet the definition of a disability under the ADAAA. See also, EEOC Right to Sue Letter: "*No finding is made as to any other issues that might be construed as having been raised by this charge*." (Emphasis added)

Therefore, contrary to Defendant's Motion to Dismiss, Mrs. Diaz exhausted her administrative remedies alleging denial of reasonable accommodation, retaliation, and termination not only under Title VII and the PDA, but also the ADAAA during the EEOC investigation.

## IV. CONCLUSION

WHEREFORE, YARITZA DIAZ, respectfully requests the Court to enter an order denying Defendant's Motion to Dismiss.

RESPECTFULLY SUBMITTED this 23rd day of January 2024.

YARITZA DIAZ

By: */s/ Scott A. Mayer*
Scott A. Mayer
Attorney at Law
5599 S. Hanover Way
Greenwood Village, CO 80111
(847)915-1929
scottm2525@yahoo.com
Attorney for Plaintiff Yaritza Diaz

** I hereby certify that the foregoing pleading complies with “Motions Practice” set forth in Magistrate Judge Dominguez Braswell’s Practice Standards VII (B)**

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2024, I electronically filed the foregoing **Plaintiff's Response to Defendant's Rule 12(b)(6) Motion To Dismiss** with the Clerk of Court using the CM/ECF system which will serve a copy of all CM/ECF participants.

*/s/ Scott A. Mayer*
Scott A. Mayer